UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ROBERT STROUGO, Individually and On Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>   v.<br><br>TIVITY HEALTH, INC., DONATO TRAMUTO, and ADAM C. HOLLAND,<br><br>         Defendants. | Case No.<br><br>__CLASS ACTION COMPLAINT__<br><br>__JURY TRIAL DEMANDED__ |

1

Plaintiff Robert Strougo ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tivity Health, Inc. ("Tivity" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Tivity securities between March 8, 2019 and February 19, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Tivity provides fitness and health improvement programs in the United States. The Company was formerly known as Healthways, Inc. and changed its name to Tivity Health, Inc. in January 2017. Tivity's common stock trades on the NASDAQ Global Select market ("NASDAQ") under the ticker symbol "TVTY."

3. In December 2018, Tivity announced that it would acquire Nutrisystem, Inc. ("Nutrisystem"), a provider of weight management products and services (the "Nutrisystem Acquisition"). On March 8, 2019, Tivity announced the completion of the Nutrisystem Acquisition for approximately $1.3 billion in cash and stock.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) following the Nutrisystem Acquisition, Tivity's Nutrition segment faced significant operational challenges; (ii) the foregoing would foreseeably have a significant impact on Tivity's revenues; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

5. On February 19, 2020, Tivity issued a press release announcing the Company's financial results for the fourth quarter and year ended December 31, 2019. Tivity disclosed, *inter alia*, that its "Nutrition segment had a disappointing end to 2019," which included "a non-cash impairment charge of $(377.1) million," contributing to a net loss for the Company of $272.8 million in the fourth quarter. Concurrently, Tivity announced the resignation of the Company's Chief Executive Officer ("CEO") Donato Tramuto ("Tramuto"), effective immediately. Discussing the Company's financial results on an earnings call, the Company's interim CEO, Robert Greczyn, stated that "[a]dmittedly, the nutrition business has not worked out as well as planned since the completion of the [Nutrisystem Acquisition] in March 2019.

6. On this news, Tivity's stock price fell $10.43 per share, or 45.49%, to close at $12.50 per share on February 20, 2020.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Tivity maintains its principal executive offices in this Judicial District.

11. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired Tivity securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Tivity is incorporated in Delaware, with principal executive offices located at 701 Cool Springs Boulevard, Franklin, Tennessee 37067. Tivity's common stock trades on the NASDAQ under the ticker symbol "TVTY."

14. Defendant Tramuto served at all relevant times as Tivity's CEO until his resignation on February 19, 2020.

15. Defendant Adam C. Holland ("Holland") has served at all relevant times as Tivity's Chief Financial Officer.

16. Defendants Tramuto and Holland are sometimes referred to herein collectively as the "Individual Defendants."

17. The Individual Defendants possessed the power and authority to control the contents of Tivity's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Tivity's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Tivity, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18. Tivity and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. Tivity provides fitness and health improvement programs in the United States. The Company was formerly known as Healthways, Inc. and changed its name to Tivity Health, Inc. in January 2017.

5

20. In December 2018, Tivity issued a press release entitled "Tivity Health to Acquire Nutrisystem for $1.3 billion in Cash and Stock." The press release stated, in relevant part:

- Combination and increased scale will create unique new value proposition for shareholders, health plans, fitness partners, members and consumers - supporting healthier lifestyles and lowering medical costs

- With the addition of Nutrisystem, Tivity Health will deliver a unique "calories in and calories out" solution

- Expect double digit accretion to Tivity Health's adjusted EPS in 2020 and beyond

- Significant potential for value creation with expected annual cost synergies of ~$30-35 million

- New business model with projected substantial cash flow to de-lever the balance sheet

NASHVILLE, Tenn. and FORT WASHINGTON, Pa., Dec. 10, 2018 /PRNewswire/ -- Tivity Health, Inc. (Nasdaq: TVTY), a leading provider of fitness and health improvement programs, and Nutrisystem, Inc. (Nasdaq: NTRI), a leading provider of weight management products and services, today announced that they have entered into a definitive agreement under which Tivity Health will acquire all of the outstanding shares of Nutrisystem for a combination of cash and stock. Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Nutrisystem shareholders will receive $38.75 per share in cash and 0.2141 Tivity Health shares for each share of Nutrisystem common stock. The transaction values Nutrisystem at an enterprise value of $1.3 billion and an equity value of $1.4 billion, or approximately $47.00 per share. The implied stock consideration of $8.25 per Nutrisystem share is based on the volume-weighted average price of Tivity Health's stock for the 10 days ended December 3, 2018. The implied transaction consideration of $47.00 per share represents a 30% premium based on the volume-weighted average price for Nutrisystem over the last five trading days.

**Materially False and Misleading Statements Issued During the Class Period**

21. The Class Period begins on March 8, 2019, when Tivity issued a press release entitled "Tivity Health Completes Acquisition of Nutrisystem." The press release stated, in relevant part:

6

NASHVILLE, Tenn., March 8, 2019 /PRNewswire/ -- Tivity Health®, Inc. (Nasdaq: TVTY), a leading provider of fitness and health improvement programs, today announced that it has completed its previously announced acquisition of Nutrisystem, Inc., a leading provider of weight management products and services, for approximately $1.3 billion in cash and stock. With this acquisition, Tivity Health will be unique in offering, at scale, an integrated portfolio of fitness, nutrition and social engagement solutions to support overall health and wellness.

**Powerful *Calories In + Calories Out* Combination**

Tivity Health believes this powerful Calories In+Calories Outcombination will offer a holistic approach to addressing critical health needs, lowering healthcare costs, and creating additional value for shareholders, health plans, fitness partners, members and consumers. The combined company will have a footprint of more than 75 million members eligible for Tivity Health's SilverSneakers®, Prime® Fitness, WholeHealth Living™ and flip50™ programs and millions of consumers for Nutrisystem's Nutrisystem®, South Beach Diet®, and DNA Body Blueprint™ products, creating multiple opportunities to increase engagement across all brands.

"We welcome Nutrisystem's powerful brands and talented team to the Tivity Health family. Both Nutrisystem and Tivity Health have successful track records improving health, both in the lives of consumers and health plan members, as well as in the communities where we do business. That experience, coupled with our shared commitment to our varied stakeholders, will power successful execution on the many opportunities that lie ahead," said Donato Tramuto, Tivity Health's Chief Executive Officer. "Since announcing the transaction, we have received overwhelmingly supportive feedback from our health plan customers, members and fitness partners about their interest in the broad array of offerings of our combined company. Our integrated approach – which addresses many of the social determinants of health fundamental to wellness – includes fitness, nutrition and social isolation, and represents a powerful offering to support healthier lifestyles, combat chronic conditions and lower medical costs. Tivity Health is now a formidable player in where the market is going – moving away from merely 'sick care' toward fully addressing healthcare."

22. On May 8, 2019, Tivity issued a press release announcing its financial results for the quarter ended March 31, 2019 (the "Q1 2019 Press Release"). Tivity represented, *inter alia*, that the integration of Nutrisystem into the Company's operations was "on track". In the Q1 2019 Press Release, Defendant Tramuto stated:

We closed our acquisition of Nutrisystem on March 8, 2019 and the Nutrition segment benefited from strong adjusted EBITDA, due to better than expected

March program starts and timing of marketing spend. As a result of the successful media and digital strategy in the first quarter, we plan to leverage Nutrisystem's media and marketing expertise to further increase enrollment and engagement in SilverSneakers and Prime Fitness.

23. With respect to the Company's Nutrition segment, the Company further stated:

**Segment Results**

\* \* \* \* \*

Nutrition Segment – Revenue was $57.6 million, and Adjusted EBITDA was $13.3 million for the 24-day period March 8, 2019 through March 31, 2019.

***"Our integration efforts are going well and we are on track to deliver the $9 million to $12 million of cost synergies for 2019 previously discussed," said Adam Holland, Tivity Health's Chief Financial Officer.***

(Emphasis added.)

24. On May 9, 2019, Tivity filed a quarterly report on Form 10-Q with the SEC, reporting in full the Company's financial results for the quarter ended March 31, 2019 (the "Q1 2019 10-Q"). In the Q1 2019 10-Q, Tivity stated, in relevant part:

On December 9, 2018, we entered into an Agreement and Plan of Merger (the "Merger Agreement") with Nutrisystem, a provider of weight management products and services, and Sweet Acquisition, Inc., a wholly-owned subsidiary of Tivity Health ("Merger Sub"). The Merger Agreement provided that Merger Sub would merge with and into Nutrisystem, with Nutrisystem surviving as a wholly-owned subsidiary of Tivity Health (the "Merger"). The Merger was completed on March 8, 2019 ("Closing"). At Closing, except for certain excluded shares, each share of Nutrisystem common stock outstanding immediately prior to Closing was converted into the right to receive $38.75 in cash, without interest, and 0.2141 of a share of Tivity Health Common Stock ("Exchange Ratio") (with cash payable in lieu of any fractional shares). Nutrisystem shares excluded from the conversion were those shares held by Nutrisystem as treasury stock and shares with respect to which appraisal rights have been properly exercised in accordance with the General Corporation Law of the State of Delaware.

***The acquisition of Nutrisystem enables us to offer, at scale, an integrated portfolio of fitness, nutrition and social engagement solutions to support overall health and wellness and to address weight management, chronic conditions, and social isolation.*** The fair value of consideration transferred at Closing was $1.3 billion ("Merger Consideration"), which includes cash consideration, the fair value of the stock consideration, and the fair value of the consideration for

Nutrisystem equity awards assumed by Tivity Health that related to pre-combination services[.]

(Emphasis added.)

25. Appended to the Q1 2019 10-Q as an exhibit was a Certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by the Individual Defendants, attesting, *inter alia*, that "[t]he information contained in the [Q1 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

26. On August 8, 2019, Tivity filed a quarterly report on Form 10-Q with the SEC, reporting in full the Company's financial results for the quarter ended June 30, 2019 (the "Q2 2019 10-Q"). The Q2 2019 10-Q contained representations concerning the Nutrisystem Acquisition that were substantively identical to those in the Q1 2019 10-Q, described *supra* at ¶ 24.

27. Appended to the Q2 2019 10-Q as an exhibit was a SOX Certification signed by the Individual Defendants, attesting, *inter alia*, that "[t]he information contained in the [Q2 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28. On November 12, 2019, Tivity filed a quarterly report on Form 10-Q with the SEC, reporting in full the Company's financial results for the quarter ended June 30, 2019 (the "Q3 2019 10-Q"). The Q3 2019 10-Q contained representations concerning the Nutrisystem Acquisition that were substantively identical to those in the Q1 2019 10-Q and the Q2 2019 10-Q, described *supra* at ¶¶ 24 and 26.

29. Appended to the Q3 2019 10-Q as an exhibit was a SOX Certification signed by the Individual Defendants, attesting, *inter alia*, that "[t]he information contained in the [Q3 2019

10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30. The statements referenced in ¶¶ 21-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) following the Nutrisystem Acquisition, Tivity's Nutrition segment faced significant operational challenges; (ii) the foregoing would foreseeably have a significant impact on Tivity's revenues; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

31. On February 19, 2020, post-market, Tivity issued a press release announcing the Company's financial results for the fourth quarter and year ended December 31, 2019. Tivity disclosed, *inter alia*, that its "Nutrition segment had a disappointing end to 2019," which included "a non-cash impairment charge of $(377.1) million," contributing to a net loss for the Company of $272.8 million in the fourth quarter. Concurrently, Tivity announced the resignation of Defendant Tramuto as the Company's CEO, effective immediately.

32. Discussing the Company's financial results on an earnings call later that day, the Company's interim CEO, Robert Greczyn, stated that "[a]dmittedly, the nutrition business has not worked out as well as planned since the completion of the [Nutrisystem Acquisition] in March 2019." Greczyn described the Company's Nutrition business unit as "performing well below its potential." Likewise, Defendant Holland stated, in part:

> Turning now to the Q4 results of Nutrition segment. Fourth quarter nutrition revenues came in at $113.7 million, a 12.2% decrease compared to the same

10

Case 3:20-cv-00165   Document 1   Filed 02/25/20   Page 10 of 20 PageID #: 10

quarter last year. This decline was primarily driven by a decrease in the DTC business, which includes both the Nutrisystem and South Beach Diet brands.

Holland further stated that the Company "recorded a noncash impairment charge of $240 million to lower the carrying amount of the Nutrisystem trade name."

33. Later in the call, in response to an analyst question as to whether the Company's Board had "opened any strategic alternatives for Nutrisystem," Kevin Wills, Tivity's Board Chairman, stated that while the Company "remain[ed] committed to putting these two brands [Tivity and Nutrisystem] together," "we have been disappointed with the Nutrisystem performance. We believe there are a number of reasons for that to include increased competition, some operational missteps, lack of innovation . . . ."

34. On these disclosures, Tivity's stock price fell $10.43 per share, or 45.49%, to close at $12.50 per share on February 20, 2020.

35. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

36. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tivity securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Tivity securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Tivity or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tivity;

- whether the Individual Defendants caused Tivity to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Tivity securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

42. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tivity securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Tivity securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

43. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

44. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

45. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tivity securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tivity securities and options at artificially inflated prices. In furtherance of

14

this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Tivity securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Tivity's finances and business prospects.

49. By virtue of their positions at Tivity, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Tivity, the Individual Defendants had knowledge of the details of Tivity's internal affairs.

51.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Tivity.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Tivity's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Tivity securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Tivity's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tivity securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52.     During the Class Period, Tivity securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tivity securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Tivity securities was substantially lower than the prices paid by Plaintiff and the

other members of the Class. The market price of Tivity securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. During the Class Period, the Individual Defendants participated in the operation and management of Tivity, and conducted and participated, directly and indirectly, in the conduct of Tivity's business affairs. Because of their senior positions, they knew the adverse non-public information about Tivity's misstatement of income and expenses and false financial statements.

57. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tivity's financial condition and results of operations, and to correct promptly any public statements issued by Tivity which had become materially false or misleading.

58. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tivity disseminated in the marketplace during the Class Period concerning Tivity's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tivity to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tivity within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tivity securities.

59. Each of the Individual Defendants, therefore, acted as a controlling person of Tivity. By reason of their senior management positions and/or being directors of Tivity, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Tivity to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Tivity and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tivity.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 25, 2020

Respectfully submitted,

BRAMLETT LAW OFFICES
By:

**s/*Paul Kent Bramlett***
*PAUL KENT BRAMLETT* #7387
Robert Preston Bramlett #25895
P. O. Box 150734
Nashville, TN 37215
Telephone: 615.248.2828
E-mails: PKNASHLAW@aol.com
Robert@BramlettLawOffices.com

POMERANTZ LLP
Jeremy A. Lieberman
Gustavo F. Bruckner
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
gfbruckner@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603

Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*