**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT STROUGO, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 3:20-cv-00165** |
| **TIVITY HEALTH, INC., et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Plaintiffs brought this putative class action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) on behalf of all those who purchased Tivity stock between March 8, 2019 and February 19, 2020. Pending before the Court is Defendants' fully briefed Motion to Dismiss. (Doc. Nos. 108, 109, 112, 113). For the following reasons, the motion will be denied.

## I. FACTUAL ALLEGATIONS[1]

Tivity Health, Inc. provides fitness and wellness programs geared toward senior citizens. (Compl. ¶ 2). Donato Tramuto served as Tivity's Chief Executive Officer and Adam Holland served as Chief Financial Officer. (Id. ¶¶ 23, 25). Hoping to expand the business in the face of intense competition, Tivity acquired Nutrisystem, a company known for its diet programming, for $1.3 billion. (Id. ¶¶ 6, 41–43, 51, 123). Following the acquisition, which became final on March 8, 2019, Dawn Zier, who was Nutrisystem's former top executive, became Tivity's President and Chief Operating Officer. (Id. ¶¶ 6, 24).

[1] The relevant background and facts necessary to resolve the pending motion to dismiss are drawn from the Consolidated Complaint (Doc. No. 105) ("Compl.").

It is alleged that Tivity painted a deceitfully rosy picture of the Nutrisystem acquisition (the "Nutrisystem Claim"). (Id. ¶¶ 52–77). Executives misled investors about Nutrisystem's performance in the beginning of 2019 and the acquisition's impact on Tivity's new "nutrition segment." (Id). Tivity misstated that the new segment was "on track" and "performing well" despite its poor performance from the onset. (Id. ¶¶ 8–9, 54–55, 80, 98, 181). At the heart of Tivity's alleged cover-up were misstated financial statistics. Specifically, the company reported that its adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") was $13.3 million. (Id. ¶ 8). But this number failed to account for an $8.3 million loss that resulted in an actual adjusted EBITDA of $5 million. (Id. ¶¶ 8–9, 53–54, 56, 88, 94–95, 98, 178).

In August 2019, Defendants again told investors that Tivity's nutrition segment results were "on track according to plan," (Id. ¶¶ 10, 64, 69, 101), and continued to report an adjusted EBITDA that failed to account for the $8.3 million loss. (Id. ¶¶ 9, 54 67–69, 74–76, 98(a), 107(a), 119(a)). Despite these assurances, however, Tivity launched a "Buy One, Get One Free" offer to customers, allegedly to recoup the hidden Nutrisystem losses. (Id. ¶ 12). Soon after the offer's launch, on December 9, 2019, Zier was "mutually terminated" without explanation. (Id. ¶ 13).

Then, on February 19, 2020, Defendants disclosed, for the first time in nearly a year, the $8.3 million adjusted EBITDA loss. (Id. ¶¶ 14, 78–83, 174, 179). Executives also admitted to the weaknesses of the Nutrisystem acquisition and announced a charge that reduced the value of the goodwill associated with the acquisition (the "Goodwill Claim"). (Id.; see also id. ¶¶ 15, 79, 173).

Lead Plaintiff Sheet Metal Workers Local No. 33, Cleveland District, Pension Fund acquired Tivity securities between March 8, 2019 and February 20, 2020.[2] They brought this

[2] Prior to consolidation, Robert Strougo filed the initial complaint in this action. (See Doc. No. 1). For ease of reference, the parties and the Court have kept Strougo's name in the caption even though Sheet Metal Workers is Lead Plaintiff. (See Compl. ¶ 21).

putative class action under Federal Rule of Civil Procedure 23 against Tivity, Tramuto, Holland, and Zier ("Defendants") on behalf of all those who purchased Tivity securities during that period. (Id. ¶¶ 21, 192). Defendants have now moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 108).

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). But "[w]hile the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Blackwell, 979 F.3d at 524 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"Where, however, a complaint alleges fraud in the purchase or sale of securities in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5, a heightened pleading standard is mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA")." Weiner v. Tivity Health, Inc., 365 F. Supp. 3d 900, 907 (M.D. Tenn. 2019) (citing Merrill Lynch, Pierce, Fenner & Smith Inc. v.

Dabit, 547 U.S. 71 (2006); Miller v. Champion Ents. Inc., 346 F.3d 660, 686 (6th Cir. 2003)). In these instances, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); see also Weiner, 365 F. Supp. 3d at 907–08.

## III. ANALYSIS

The parties categorize Tivity's alleged misstatements into two groups: (1) the Nutrisystem Claim, where Tivity's executives allegedly misled investors about the success of the Nutrisystem acquisition; and (2) the Goodwill Claim, where Tivity allegedly impaired its goodwill by carrying a goodwill value that exceeded its implied fair value. (See Compl. ¶¶ 98, 107, 109, 119, 124; see also Doc. No. 109 at 9, 20). Plaintiffs argue that both the Nutrisystem Claim and Goodwill Claim violate Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a). ("The 1934 Act").

Defendants move to dismiss on two grounds. First, they argue that neither the Nutrisystem Claim nor the Goodwill Claim adequately alleges that any statements were misleading. (Doc. No. 109 at 9). And second, they argue that each claim failed to allege the requisite scienter, or state of mind. (Id.). The Court will address each argument in turn after summarizing the relevant law.

### A. Section 10(b) of the 1934 Act and Promulgating Rule 10b-5

Section 10(b) forbids the "use or employ, in connection with the purchase or sale of any security . . .[of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." Ohio Pub. Emples. Ret. Sys. v. Fed. Home Loan Mortg. Corp., 830 F.3d 376, 383 (6th Cir. 2016) (citing 15 U.S.C. § 78j(b)). And Rule 10b-5 promulgated thereunder forbids "the making of any 'untrue statement of a material fact' or the omission of any material

fact 'necessary in order to make the statements made . . . not misleading.'" Id. (citing Dura Pharms, Inc. v. Broudo, 544 U.S. 336, 341 (2005)); see also 17 C.F.R. § 240.10b-5(b).

"There are six elements to a securities-fraud suit under Section 10(b) and Rule 10b-5: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" In re Omnicare, Inc. Sec. Litig., 769 F.3d 455, 469 (6th Cir. 2014) (citing Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1317 (2011)); see also Dougherty v. Esperion Therapeutics, Inc., 905 F.3d 971, 979 (6th Cir. 2018). Defendants challenge only the first and second elements of a Section 10(b) claim. (See Doc. No. 109). Because neither party disputes the remaining elements, and because the Court agrees that Plaintiffs have adequately pled facts to support them, the Court will examine only whether Plaintiffs properly allege that Defendants made a material misstatement or omission and whether they did so with scienter. See In re EveryWare Global, Inc. Secs. Litig., 175 F. Supp. 3d 837, 851 (S.D. Ohio 2016).

B. Element One: Material Misrepresentation or Omission

"Successfully pleading an actionable material misrepresentation or omission requires a plaintiff to allege facts demonstrating two things: (1) that a defendant made a statement or omission that was false or misleading; and (2) that this statement or omission concerned a material fact." Omincare, 769 F.3d at 470 (citing Matrixx, 131 S. Ct. at 1318). Plaintiffs can allege a false or misleading statement where they "allege particular facts demonstrating that defendants had actual knowledge that their statements . . . were false or misleading at the time they were made." Id. at 471. Materiality usually exists only "if a reasonable investor would have viewed the misrepresentation or omission as 'having significantly altered the total mix of information made

available.'" Id. at 471 (citing In re Sofamor Danek Grp., 123 F.3d 394, 400 (6th Cir. 1997)). A court examines only objective allegations at this stage; a subjective inquiry of what Defendants knew is reserved for the scienter element. See id. at 471, 476–77.

And again, as discussed in Section II, *supra*, the PSLRA requires a plaintiff to meet a heightened pleading standard and "allege the time, place, and content of the alleged misrepresentation [or omission] on which he or she relied [and] the fraudulent scheme . . . ." Id. (citing Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc. ("Omnicare II"), 719 F.3d 498, 503 (6th Cir. 2013), cert. granted, 134 S. Ct. 1490 (2014).

1. The Nutrisystem Claim

Having reviewed the Consolidated Complaint in the light most favorable to Plaintiffs, the Court can infer that the Nutrisystem Claim adequately and objectively alleges a material misrepresentation or omission, even under a heightened pleading standard. Plaintiffs allege that Defendants failed to disclose Nutrisystem's $8.3 million net loss caused by a weak diet season. (Compl. ¶¶ 98, 107, 119). Specifically, Plaintiffs allege that Defendants assured investors that the nutrition segment had "performed well across several key metrics, including revenue and adjusted EBITDA," and that the segment's performance was "on track." (Id. ¶¶ 53, 91–92). They allege that adjusted EBITDA was the key metric Defendants "used to evaluate performance," and that Defendants "failed to disclose that . . . Nutrisystem's adjusted EBITDA" was $8.3 million lower than initially reported. (Id. ¶¶ 9, 49, 53–54, 80, 88–92, 96, 98–100, 103, 108, 112, 114, 180–82; see also Doc. No. 112 at 7). According to Plaintiffs, Defendants used the EBITDA metric in specific press releases, conference calls, SEC filings, and investor presentations. (Id. ¶¶ 49, 87–92, 96–97, 99–100, 103, 106, 108, 112, 114). Moreover, Defendants' 2019 Form 10-K stated that

a segment's performance was evaluated based on its EBITDA. (Id. ¶¶ 120–121, see also Doc. No. 112 at 10). Plaintiffs further allege that in August and November 2019, Defendants continued to hide the $8.3 million net loss and assured investors that the nutrition segment was "on track" despite adjusting the EBITDA guidance. (Id. ¶¶ 10, 64–65, 67, 69, 71, 80, 99, 101–03, 110–12).

Defendants counter that the Nutrisystem Claim includes neither misleading statements nor actionable misconduct. (See Doc. No. 109 at 9–15). Specifically, Defendants argue that Plaintiffs fail to allege any misleading statements because Defendants in fact disclosed the net loss and weak diet season to Plaintiffs in their financial reports. (See id. at 10–11). Defendants point to Zier's earning call statement that "January and February did start off a little weaker than expected for many different reasons," (see Doc. No. 109-3), and that Defendants' disclosure of pro forma revenues and net loss figures showed an $8 million net loss. (Doc. No. 109 at 11).

Defendants also argue that Plaintiffs' alleged misstatements are either inactionable corporate puffery or protected forward looking statements. (Id.). Statements amount to inactionable puffery where they are "so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." In re Ford Motor Co. Sec. Litig., 381 F.3d 563, 571 (6th Cir. 2004) (internal citations omitted). And the PSLRA protects forward-looking statements by making a defendant liable only where statements are material, and "if the defendant 'had actual knowledge that the statements were false or misleading'; as well as if the defendant did not identify the statements as forward-looking or insulate them with 'meaningful cautionary language.'" Weiner, 365 F. Supp. 3d at 910.

But Defendants' arguments are unpersuasive at the motion to dismiss stage. Courts have found that statements similar to Defendants' satisfy the first element of a Section 10(b) claim. For

example, in EveryWare, the court found that statements that a company was "on track" or that "the business continues to perform well" were actionable and objectively alleged false or misleading statements. 175 F. Supp. 3d at 855 (collecting cases). Here, Plaintiffs have adequately and objectively alleged the nature of the misstatements at play. Specifically, they argue that "[d]efendants' false and misleading statements were made in the face of contradictory evidence such as Nutrisystem's failed diet season and a spike in competition, leading to declining sales, all of which were known to Defendants." (Doc. No. 112 at 12; see also Compl. ¶¶ 7, 61–63, 75, 81, 150). Moreover, whether Defendants actually disclosed certain other information is a fact issue that is premature to address at the motion to dismiss stage. See Omnicare, 769 F.3d at 472.

Nor are Defendants' statements of the protected, forward-looking variety. Statements are not protected where, as here, they are "not accompanied by meaningful cautionary language." Miller, 346 F.3d at 672. Here, Plaintiffs have at least pled that Defendants had objective, actual knowledge and that the statements were not accompanied by meaningful cautionary language. The supposed cautionary language Defendants point to is, overall, "merely a boilerplate litany of generally applicable risk factors." Weiner, 365 F. Supp. 3d at 912; (Doc. No. 109-11). Accordingly, the Court finds Plaintiffs' adequately alleged material misstatements and omissions regarding the Nutrisystem Claim.

2. The Goodwill Claim

The Goodwill Claim also adequately pleads material misstatements and omissions. "Goodwill is the excess of purchase price over fair market value of the net assets acquired." Zwick Partners, LP v. Quorum Health Corp., No. 3:16-cv-2475, 2018 U.S. Dist. LEXIS 97942, at *3 (M.D. Tenn. Apr. 19, 2018). This Court has recently outlined the concept of goodwill impairments:

> A company must review its goodwill on a regular basis to determine if its reported value is impaired (i.e., whether its value has declined). The value of goodwill is impaired when the reported amount of goodwill exceeds its fair value. Dudley [v. Haub], [No. 2:11-cv-05196 (WJM)], 2013 U.S. Dist. LEXIS 61386, 2013 WL 1845519, at * 3 [(D.N.J. Apr. 30, 2013)]. Goodwill should also be tested for impairment between annual tests if an event occurs or circumstances change that would more likely than not reduce the fair value of that asset. Id. Similarly, accounting for the impairment of long-lived assets requires an annual evaluation of the market value of long-lived assets carried on a corporation's books and appropriate adjustments to the book value in accordance with the market value. In re Global Crossing, Ltd. Sec. Litig., 322 F.Supp.2d 319, 342-43 (S.D. N.Y. 2004). A long-lived asset should also be tested for recoverability whenever events or changes in circumstances indicate that its carrying amount may not be recoverable. Brasher [v. Broadwind Energy, Inc.], No. 11 CV 991, 2012 U.S. Dist. LEXIS 55194, 2012 WL 1357699, at * 21 [(N.D. Ill. Apr. 19, 2012)].

Zwick, 2018 U.S. Dist. LEXIS 97942, at *3.

Plaintiffs allege that Defendants impaired goodwill by the second quarter of 2019 by inflating its assets and carrying a goodwill value that exceeded its implied fair value. (See Compl. ¶¶ 136–156). Defendants counter that the Goodwill Claim, as with the Nutrisystem Claim, fails to allege a misstatement. (See Doc. No. 109 at 21–22). In support, Defendants attempt to distinguish this case from Zwick. (Doc. No. 109 at 21 n. 7). They argue that this case deals with an acquisition rather than a spin-off, and that Plaintiffs do not allege a delay in taking an impairment due to an improper motive to secure funding. (Id.). But Defendants' arguments are as unpersuasive for the Goodwill Claim as they were for the Nutrisystem Claim. Although this case is unlike Zwick in that it deals with an acquisition as opposed to a spin-off, it alleges improper motives. In particular, Plaintiffs allege that Defendants hid the Nutrisystem acquisition within the diet season to obfuscate the adjusted EBITDA and inflate their value, thereby impairing goodwill. (See Compl. ¶¶ 74, 86, 180). Plaintiffs further allege that "[d]efendants knew that multiple triggering events [to assess impairment] existed no later than 2Q19 – yet [Defendants] failed to impair and write down both the goodwill and Nutrisystem trade name in both 2Q19 and 3Q19." (Doc. No. 112 at 17; see also

Compl. ¶¶ 11, 69, 76, 79, 107(d), 119(d), 120–70, 173). That these improper motives are not related to a delayed impairment is immaterial; "[c]ourts may consider motive along with all other allegations in the complaint." Zwick, 2018 U.S. Dist. LEXIS 97942, at *27.

Additionally, Plaintiffs have adequately alleged various impairment triggers, including: "(1) a sustained 60% decrease in Tivity's share price and a $883 million drop in its market capitalization (53%), including a one-day stock price decline of 30% caused specifically by Tivity's announcement of the Nutrisystem acquisition (¶¶137-141); (2) sustained underperformance of the Nutrition segment, including a failed 2019 diet season, which generated 9.2% less revenue than the prior year and only $5 million in adjusted EBITDA, compounding the woes of the previously poor 2018 diet season and creating a shortfall that Defendants only belatedly admitted would "result in lower performance for the remainder of the year" (¶¶143-146, 160, 164); (3) 2Q19 revenue and adjusted EBITDA results worse than the comparable quarter in 2018, despite the purported synergy benefits (¶¶145-147, 160, 164); (4) a reduction in Nutrition segment guidance in 2Q19 that continued to conceal the full 1Q19 adjusted EBITDA loss of $8.3 million, making even updated guidance unachievable (¶¶68, 75, 107(c), 119(c), 148, 160, 164); and (5) a major "spike" in industrywide competition leading up to and during 2Q19 (¶¶149-152)." (Doc. No. 112 at 18; see also Compl. ¶¶ 68, 75, 107(c), 119(c), 137–41, 143–52, 160, 164). Thus, at the motion to dismiss stage, "Plaintiffs have sufficiently alleged, given the underlying 'red flags,'" objective misstatements leading to a goodwill impairment. Zwick, 2018 U.S. Dist. LEXIS 97942, at *18. Accordingly, the Court finds Plaintiffs have adequately alleged material misstatements and omissions regarding the Goodwill Claim.

C. Element Two: Scienter

"In the securities-fraud context, scienter includes a knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." Doshi v. Gen. Cable Corp., 823 F.3d 1032, 1039 (6th Cir. 2016) (internal citations and quotations omitted). Courts must use a three-part test "to determine the sufficiency of a plaintiff's scienter allegations." Dougherty v. Esperion Therapeutics, Inc., 905 F.3d 971, 979 (6th Cir. 2018) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322–23 (2007)). First, courts must "accept all factual allegations in the complaint as true." Tellabs, 551 U.S. at 322. Second, courts "'must consider the complaint in its entirety' to determine 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter.'" Dougherty, 905 F.3d at 979 (citing Tellabs, 551 U.S. at 322–23). And third, courts "'must take into account plausible opposing inferences' and decide whether 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" Id. (citing Tellabs, 551 U.S. at 323–24).

The Sixth Circuit applies nine additional, "non-exhaustive factors" when employing the tripartite scienter inquiry. See Helwig v. Vencor, Inc., 251 F.3d 540, 552 (6th Cir. 2001). Those factors include:

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

Omnicare, 769 F.3d at 473 (citing Helwig, 251 F.3d at 552). The Court will apply this framework to both of the claims at issue.

1. Nutrisystem Claim

Defendants argue that Plaintiffs failed to allege with particularity facts giving rise to a strong inference of scienter, as required under the PSLRA. (See Doc. No. 109 at 16–17). Specifically, Defendants argue that the Helwig factors do not support a finding of scienter. (Doc. No. 109 at 18). They argue that the first factor does not apply because Plaintiffs do not allege stock sales by insiders during the class period. (Id.). They further argue that the second and third factors weigh against scienter because Defendants did not hide results or make misleading statements at the January 2020 JP Morgan Conference because they, as discussed in Section III.B.1, *supra*, actually disclosed the $8.3 million net loss and disappointing 2019 diet season. (See id.). Alternatively, Defendants argue that the Complaint, even when viewed in totality, does not support a finding of scienter. (Id. at 19–20).

But Defendants' scienter arguments are unavailing, as Plaintiffs have alleged a strong inference of scienter for several reasons. First, Plaintiffs allege that Defendants had actual knowledge of the nutrition segment's undisclosed prior poor performance (Compl. ¶¶ 7, 61–63). Specifically, they allege Defendants knew "that Nutrisystem's marketing efforts . . . were ineffectual: inbound sales calls dried up, distraught salespeople quit after their commissions were wiped out and sales results were so poor" that Nutrisystem had to layoff employees. (See Doc. No. 112 at 20–21). And despite this, Defendants assured investors the segment was "performing well" and was "on track." (Compl. ¶¶ 91–95, 101, 111–13). Second, Plaintiffs allege that terminations of high-ranking executives, such as Zier and Tramuto, support a strong inference of scienter. (Id. ¶¶ 183–84). They allege that Zier and Tramuto were both terminated without warning – Zier during

Defendants' "attempts to salvage Tivity's FY19 results," and Tramuto just a day before "the Company announced its 4Q19 results." (Id. ¶¶ 183–84). Third, Plaintiffs argue that the time between fraudulent statements and inconsistent information supports a strong inference of scienter. (Id. ¶¶ 118, 178–79). Plaintiffs allege that, at a January 2020 conference, Defendants informed investors they were "confident" the Nutrisystem acquisition would "pay off during this diet season"; however, they reversed course only a month later, conceding the investment was "a step backward." (Id. ¶¶ 177–79; see also Doc. No. 112 at 23). And fourth, Plaintiffs argue there are no plausible competing inferences. (See Doc. No. 112 at 20–23).

Each of Plaintiffs' allegations satisfy the relevant Helwig factors as well as the three-part test required "to determine the sufficiency of a plaintiff's scienter allegations." Dougherty, 905 F.3d at 979 (internal citations omitted). That several Helwig factors are inapplicable here does not meaningfully detract from a strong inference of scienter, as the factors are "non-exhaustive." See Helwig, 251 F.3d at 552. Thus, having (1) accepted all factual allegations in the complaint as true; (2) considered the complaint in its entirety, and (3) noted that there are no plausible opposing inferences, the Court concludes that Plaintiffs have alleged a strong inference of scienter regarding the Nutrisystem Claim. See Dougherty, 905 F.3d at 979 (citing Tellabs, 551 U.S. at 322–24).

2. Goodwill Claim

The Court need not engage in an extensive exegesis in concluding that the Goodwill Claim similarly pleads a strong inference of scienter, as Defendants largely reiterate the same, unpersuasive arguments. (See Doc. No. 109 at 23–24). Specifically, Defendants argue that there is no strong inference of scienter where a company actually discloses the possibility of an impairment. (Doc. No. 109 at 23). But as alluded to in Section III.B.1, *supra*, whether Defendants actually disclosed the possibility of an impairment is both irrelevant and premature at the motion

to dismiss stage. See Omnicare, 769 F.3d at 472. Rather, Plaintiffs have at least alleged goodwill impairment triggers that were subjectively known because Defendants "turned a blind eye to the long-lived intangible asset impairment indicators present, ignored the reduced revenue guidance in 2Q19, and either avoided the required impairment test at 2Q19 or ignored the results of such a test that would have clearly indicated that a write-down of the tradename was necessary." (Compl. ¶ 167). Thus, accepting all factual allegations in the complaint as true, considering the complaint in its entirety, and noting that there are no plausible opposing inferences, the Court concludes that Plaintiffs have alleged a strong inference of scienter regarding the Goodwill Claim. See Dougherty, 905 F.3d at 979 (citing Tellabs, 551 U.S. at 322–24).

Defendants alternatively argue that were the Court to uphold the Goodwill Claim, it should dismiss Zier because she, as a non-accountant who did not sign the Form 10-Qs, did not have authority over the goodwill statements. (Doc. No. 109 at 24–25). But the Court will reject Defendants' invitation to dismiss Zier at this stage because the Sixth Circuit has clarified that:

> The state(s) of mind of any of the following are probative for purposes of determining whether a misrepresentation made by a corporation was made by it with the requisite scienter under Section 10(b): . . .
>
> a. The individual agent who uttered or issued the misrepresentation;
>
> b. Any individual agent who authorized, requested, commanded, furnished information for, prepared (including suggesting or contributing language for inclusion therein or omission therefrom), reviewed, or approved the statement in which the misrepresentation was made before its utterance or issuance;
>
> c. Any high managerial agent or member of the board of directors who ratified, recklessly disregarded, or tolerated the misrepresentation after its utterance or issuance . . . .

Omnicare, 769 F.3d at 476 (internal citations omitted). Here, Plaintiffs have alleged that Zier, a member of the board following the Nutrisystem acquisition, continued to make statements that

potentially disregarded, or at least ratified, misstatements related to Defendants' goodwill impairment. (See Compl. ¶¶ 24, 52–53, 58, 65, 71). Moreover, Plaintiffs allege that Zier "had actual knowledge of multiple impairment triggers" that impacted goodwill, including an adjusted EBITDA decline and an increased competitive environment. (See id. ¶ 136; see also id. ¶¶ 141, 147, 150, 152, 154). The Court finds it would therefore be inappropriate to dismiss Zier with respect to the Goodwill Claim at this point in the proceedings.

In sum, when considering the first and second elements of a Section 10(b) claim, the Court "must tread lightly at the motion-to-dismiss stage, engaging carefully with the facts of a given case and considering them in their full context." Omnicare, 769 F.3d at 472 (internal citations omitted). An initial review of the complaint, viewed in the light most favorable to Plaintiffs, shows adequate, objective allegations of false and misleading statements that a reasonable investor would have viewed as significant. See id. at 470. Plaintiffs also allege a strong inference of scienter. See id. at 472. And each of the statements identified were pled with sufficient particularity; Plaintiffs alleged the date and time of each statement, why each statement was misleading, and the reason or reasons why. (See Compl. ¶¶ 10, 14, 36–38, 40, 42, 44, 50–51, 53, 64, 71, 87, 91, 95, 97, 99, 101, 106, 109, 117–118, 154). These allegations satisfy the heightened pleading standard for a Section 10(b) claim. See 15 U.S.C. § 78u-4(b)(2); see also Weiner, 365 F. Supp. 3d at 907–08. Accordingly, dismissing such allegations at this stage would be premature. See id.

D. Section 20(a) of the 1934 Act

"In order to plead control person liability [under Section 20(a)], a plaintiff needs to establish that the defendant actually participated in the operations of the violator and that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated. Zwick, 2018 U.S. Dist. LEXIS 97942, at *30. "Allegations of

control are not averments of fraud and therefore need not be pleaded with particularity." Jackson Cty. Emples. Ret. Sys. v. Ghosn, No. 3:18-cv-01368, 2020 WL 7711378, at *20 (M.D. Tenn. Dec. 29, 2020) (internal citations and quotations omitted) (analyzing whether individuals actually participated in operations such that they were liable as a control person under Section 20(a)).

Here, Plaintiffs allege that "Defendants were controlling persons of Tivity within the meaning of § 20(a)," and that "[b]y virtue of their high-level positions as officers and/or directors of Tivity, their ownership and contractual rights, participation and awareness of the Company's operations, and intimate knowledge of the statements filed by the Company . . . [they] had the power to influence and control . . . the decision-making of the Company, including the content and dissemination of the allegedly false and misleading statements." (Compl. ¶ 208). Plaintiffs further allege that "[a]s a direct and proximate result of" Defendants' acts, Plaintiffs "suffered damages in connection with their purchases of Tivity common stock during the Class Period when the relevant truth was revealed." (Id. ¶ 210). Defendants counter that because Plaintiffs fail to state any viable Section 10(b) claim, they cannot state a claim under Section 20(a).

But the Court's finding that Plaintiffs have stated a viable Section 10(b) claim nullifies Defendants' argument. Where a viable Section 10(b) claim is set forth, dismissal of a Section 20(a) claim is "unwarranted." See Winslow v. BancorpSouth, Inc., No. 3:10-00463, Fed. Sec. L. Rep. (CCH) P96, 304, 2011 WL 7090820, at *25 (M.D. Tenn. Apr. 26, 2011); see also Kyrstek v. Ruby Tuesday, Inc., No. 3:14-cv-01119, 2016 U.S. Dist. LEXIS 43523, at *30 (M.D. Tenn. Mar. 31, 2016). Here, because Plaintiffs set forth a viable Section 10(b) claim, the Court will not dismiss Plaintiffs' Section 20(a) claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be denied. Counts I and II will proceed, and this case will be returned to the Magistrate Judge for further case management.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE