UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ROBERT STROUGO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:20-cv-00165 |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | Judge Waverly D. Crenshaw, Jr. |
| vs. | ) ) | Magistrate Judge Jeffery S. Frensley |
| TIVITY HEALTH, INC., et al., | ) ) | LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF |
| Defendants. | ) ) ) | SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS AND MEMORANDUM OF LAW IN SUPPORT |
| | ) | THEREOF |

4938-3218-2351.v1

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. THE TERMS OF THE SETTLEMENT.................................................................3

III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................6

    A. Plaintiff and Lead Counsel Have Adequately Represented the Class ....................7

    B. The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Negotiation Process ..........................................................................................8

    C. The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria....................9

        1. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Potential Appeals ......................................................9

        2. The Method of Distributing Relief Is Effective........................................10

        3. Attorneys' Fees and Expenses ...............................................................11

        4. Identification of Agreements ..................................................................12

    D. Class Members Are Treated Equitably..................................................................12

    E. The Judgment of Experienced Trial Counsel.......................................................13

    F. The Sixth Circuit's Public Interest Factor Is Satisfied..........................................14

IV. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE .........................................14

V. PROPOSED SCHEDULE OF EVENTS.........................................................................16

VI. CONCLUSION..............................................................................................................17

4938-3218-2351.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
  2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ...................................................9

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..............................................................................15

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981) ............................................................................14

*Grae v. Corr. Corp. of Am.*,
  2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ...................................................11

*Hyland v. HomeServices of Am., Inc.*,
  2012 WL 122608 (W.D. Ky. Jan. 17, 2012) ..........................................................8

*In re Genworth Fin. Sec. Litig.*,
  2016 WL 7187290 (E.D. Va. Sept. 26, 2016) ......................................................12

*In re Se. Milk Antitrust Litig.*,
  2013 WL 2155379 (E.D. Tenn. May 17, 2013) ...................................................12

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 2946459 (E.D. Tenn. June 30, 2014) ...................................................11

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................................7

*Int'l Union, United Auto., Aerospace, & Agric. Implement
  Workers of Am. v. Gen. Motors Co.*,
  497 F.3d 615 (6th Cir. 2007) ..............................................................................14

*Jackson Cnty. Emps.' Ret. Sys. v. Ghosn, et al.*,
  No. 3:18-cv-01368, ECF 267 (M.D. Tenn. Oct. 7, 2022) ....................................11

*Kizer v. Summitt Partners, L.P.*,
  2012 WL 1598066 (E.D. Tenn. May 7, 2012) .....................................................15

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ............................................................................12

*Motter v. O'Brien*,
  2014 WL 12892732 (S.D. Ohio June 12, 2014) ...............................................7, 14

4938-3218-2351.v1

*N.Y. State Tchrs' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016),
    *aff'd sub nom. Marro v. N.Y. State Tchrs' Ret. Sys.*,
    2017 WL 6398014 (6th Cir. Nov. 27, 2017)...................................................................11

*Rudi v. Wexner*,
    2022 WL 1682297 (S.D. Ohio May 16, 2022) ...........................................................13

*Shy v. Navistar Int'l Corp.*,
    2022 WL 2125574 (S.D. Ohio June 13, 2022) ..........................................................13

*Williams v. Vukuvich*,
    720 F.2d 909 (6th Cir. 1983) ...............................................................................13, 15

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
    §78u-4(a)(4)...................................................................................................1, 3, 4, 12
    §78u-4(a)(7)................................................................................................................15

Federal Rules of Civil Procedure
    Rule 23.........................................................................................................................3
    Rule 23(a)(2).................................................................................................................3
    Rule 23(c)(2)...............................................................................................................15
    Rule 23(e).................................................................................................................7, 14
    Rule 23(e)(1)............................................................................................................3, 6
    Rule 23(e)(1)(B)..............................................................................................6, 14, 15
    Rule 23(e)(2)............................................................................................................2, 6
    Rule 23(e)(2)(A)...........................................................................................................7
    Rule 23(e)(2)(C)...........................................................................................................9
    Rule 23(e)(2)(C)(i)........................................................................................................9
    Rule 23(e)(2)(C)(ii).....................................................................................................10
    Rule 23(e)(2)(C)(iii)....................................................................................................11
    Rule 23(e)(2)(C)(iv)....................................................................................................12
    Rule 23(e)(2)(D).........................................................................................................13
    Rule 23(e)(3).................................................................................................................6
    Rule 23(e)(4)...............................................................................................................12

4938-3218-2351.v1

Sheet Metal Workers Local No. 33, Cleveland District, Pension Fund ("Lead Plaintiff" or "Plaintiff") respectfully submits this memorandum in support of its motion for preliminary approval of settlement reached in this Litigation ("Settlement").[1]  The proposed Settlement provides a recovery of $17,050,000.00 in cash to resolve this securities class action against all Defendants.  The Settlement is memorialized in the Stipulation.  Counsel for Plaintiff has met and conferred with counsel for the Defendants, and the Defendants do not oppose the relief requested herein.

By this motion, Plaintiff seeks entry of an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the form and manner of giving notice of the proposed Settlement to the Class; and (3) setting a hearing date for the Court to consider final approval of the Settlement, approval of the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Plaintiff's application for an award pursuant to 15 U.S.C. §78u-4(a)(4) reflecting its time and expenses (the "Settlement Hearing"), and a schedule for various deadlines relevant thereto ("Preliminary Approval Order").  As shown below, the Settlement is a very good result for the Class under the circumstances; is fair, reasonable, and adequate under the governing standards in this Circuit; and warrants preliminary and ultimately final approval by this Court.

## I.    INTRODUCTION

As set forth in the Stipulation, the Settlement provides for the payment of $17.05 million in cash to resolve this securities class action against all Defendants.  This is a significant recovery for the Class and was reached by experienced counsel following more than five years of vigorous litigation and arm's-length mediations overseen by highly experienced mediators at Phillips ADR:

---

[1]    Unless otherwise defined herein, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement dated June 23, 2025 ("Stipulation"), filed concurrently herewith.  Emphasis is added and citations are omitted throughout unless otherwise noted.

Gregory P. Lindstrom and Miles N. Ruthberg. The proposed Settlement satisfies Rule 23(e)(2) of the Federal Rules of Civil Procedure and the Sixth Circuit's standards for settlement approval. The Settlement is fair, reasonable, and adequate as it provides for the all-cash recovery without the risks of further litigation.

Plaintiff and Lead Counsel approve of the Settlement. Plaintiff is a sophisticated institutional investor with over $100 million dollars of assets under management and experience overseeing securities fraud litigation. Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has substantial securities litigation experience and has litigated hundreds of cases to resolution; its attorneys are recognized as leading experts in the field. Plaintiff retained Robbins Geller specifically because of its experience and acumen in large complex securities matters like this one, as well as its experience in this Court.

Plaintiff and Lead Counsel understood there were serious risks in continued litigation. Although Plaintiff believes very strongly in the merits of this case, Defendants believe very strongly in their defenses. At trial, Plaintiff would have had the burden of proving each of the elements of its claims, while Defendants would only need to defeat one to prevail. Continuing to litigate through trial, including completing two *De Bene Esse* depositions (one located in Italy), and litigating numerous unresolved motions, including Defendants' renewed motions for summary judgment and to decertify the class, and any resulting appeals would have been very expensive, could have dragged on for years, and could have raised substantial risks of either a reduced recovery or no recovery at all. Considering the recovery provided for the Class in this Settlement against the risks incurred in continuing to prosecute the case, the Settlement at this juncture is a strong recovery in the Class' best interests.

4938-3218-2351.v1

At this stage, the Court need only determine that it will "likely" be able to approve the proposal under Rule 23(a)(2) (*see* Fed. R. Civ. P. 23(e)(1)) such that the Class should be notified of the proposed Settlement. In light of the substantial recovery obtained and the risks and expenses posed by a trial of this case, Plaintiff respectfully requests that the Court enter the Preliminary Approval Order, which will, among other things:

- preliminarily approve the Settlement on the terms set forth in the Stipulation;

- approve the form and content of the Notice, Proof of Claim and Release, Summary Notice, and Postcard Notice attached as Exhibits 1-4 to the Preliminary Approval Order;

- find that the procedures for distribution of the Notice and Postcard Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

- set a schedule and procedures for: disseminating the Postcard Notice and Notice publication of the Summary Notice; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and litigation expenses, including an award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4); submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II. THE TERMS OF THE SETTLEMENT

The Settlement set forth in the Stipulation resolves, fully, finally and with prejudice, the claims against Defendants of a class of all Persons who, between March 8, 2019, and February 19, 2020, inclusive, purchased or otherwise acquired Tivity Health, Inc. ("Tivity Health") common stock. Excluded from the Class by definition are Defendants, members of their immediate families, any entity of which a Defendant has a controlling interest, and the legal representatives, heirs, predecessors, successors, or assigns of any excluded party.

Pursuant to the proposed Settlement, Defendants shall pay, or cause to be paid, $17.05 million ("Settlement Amount"), which will be deposited into an interest-bearing escrow

account ("Escrow Account") no later than 30 calendar days after the later of: (a) entry of the Preliminary Approval Order; or (b) the provision to Defendants' Counsel of all information necessary to effectuate a transfer of funds. Stipulation, ¶2.2. Interest on the Settlement Amount will accrue for the benefit of the Class and is referred to herein as the Settlement Fund. *Id*. Notice to the Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund. Stipulation, ¶2.6. Plaintiff proposes that a nationally recognized class action settlement administrator, Verita Global ("Verita"), be appointed here to oversee notice and administration. The proposed notice plan and plan for claims processing is discussed below in §IV.

Because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses shall be paid out of the Settlement Fund.

Plaintiff intends to request an amount not to exceed $26,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. Any such amounts the Court awards shall be paid from the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees of no more than 25% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation not to exceed $2,000,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Such fees and expenses shall be paid from the Settlement Fund once the Court executes the Judgment and upon entry of the order awarding such fees and expenses.

Once Notice and Administration Costs, Taxes, Tax Expenses, Court-approved attorneys' fees and expenses, and any award to Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount ("Net Settlement Fund") shall be distributed pursuant to the

- 4 -

Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. The Plan of Allocation treats Class Members equitably and accounts for the strengths of their particular claims.

The Settling Parties have negotiated a Supplemental Agreement providing Defendants the right to terminate the Settlement based on certain conditions if the Court provides a renewed opt out opportunity. Stipulation, ¶7.4.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants arising out of, or in connection with both: (i) the purchase or acquisition of Tivity Health common stock during the Class Period; and (ii) the allegations, acts, facts, matters, occurrences, disclosures, filings, representations, statements, or omissions that were or could have been alleged in the Litigation. Stipulation, ¶1.25.

The Notice of Proposed Settlement of Class Action ("Notice") explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proof of Claim and Release forms ("Proof of Claim") pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; and that there will be no reversion to Defendants once the Settlement becomes effective. The Notice also informs Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees and expenses; and (ii) the date, time, and location of the Settlement Hearing.

If the Court grants preliminary approval, the Claims Administrator will email or mail (where an email is unavailable) the Postcard Notice (Exhibit 4 to the Preliminary Approval Order) to Class Members who can be identified with reasonable effort. After entry of the Preliminary Approval Order, the Claims Administrator will cause the Notice and Proof of Claim to be posted on the Settlement-designated website. Additionally, the Claims Administrator will cause the Summary

- 5 -

Notice (Exhibit 3 to the Preliminary Approval Order) to be published once in the national edition of

*The Wall Street Journal* and once over a national newswire service.

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely

be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, "[w]hen determining whether the proposed settlement is fair[,] adequate, and

reasonable," courts in the Sixth Circuit take into account the following factors (several of which

overlap with Rule 23(e)(2)):

> (1)    the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

(2)     the complexity, expense and likely duration of the litigation;

(3)     the stage of the proceedings and the amount of discovery completed;

(4)     the judgment of experienced trial counsel;

(5)     the nature of the negotiations;

(6)     the objections raised by the class members; and

(7)     the public interest.

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001).

The proposed $17.05 million cash Settlement easily satisfies Rule 23(e), as well as the Sixth Circuit's factors, which are addressed below (some together, to the extent they overlap). While Plaintiff and its counsel believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked simply to permit notice of the terms of the Settlement to be sent to the Class and to schedule a hearing, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to consider any expressed views by Class Members of the fairness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of fees and expenses, including Plaintiff's request for an award of its time and expenses incurred in representing the Class. Fed. R. Civ. P. 23(e); *Motter v. O'Brien*, 2014 WL 12892732, at *1 (S.D. Ohio June 12, 2014).

A.     **Plaintiff and Lead Counsel Have Adequately Represented the Class**

From the outset of this case, Plaintiff and its counsel have adequately represented the Class, satisfying Rule 23(e)(2)(A) (the class representatives and class counsel adequately represented the class), as well as the Sixth Circuit's closely related third factor (the stage of proceedings and the amount of discovery completed), by diligently prosecuting this Litigation on their behalf.

On August 17, 2020, during the early months of the COVID pandemic, Plaintiff's representative travelled to Nashville to appear in-person at an evidentiary hearing on competing motions for appointment of lead plaintiff. *See* ECF 89. After its motion was granted, Plaintiff and

its counsel, among other things: drafted the operative complaint; opposed Defendants' motion to dismiss; secured class certification (twice) and defeated Defendants' Rule 23(f) petition; opposed Defendants' motion for summary judgment; produced documents responsive to Defendants' document requests and sat for a deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; issued subpoenas to numerous nonparties pursuant to Rule 45 of the Federal Rules of Civil Procedure; reviewed and analyzed over 800,000 pages of documents produced by Defendants, and numerous third parties; took over 20 fact and expert depositions; and engaged in settlement negotiations with the assistance of mediators Gregory P. Lindstrom and Miles N. Ruthberg on four separate occasions. Plaintiff and Lead Counsel's efforts to resolve this action continued after the mediation process and ultimately resulted in a Settlement of $17.05 million, which will provide significant relief to the Class.

### B. The Settlement Is the Result of a Thorough, Rigorous, and Arm's-Length Negotiation Process

The negotiations were at arm's length and well informed by, among other things, extensive investigation and litigation by Lead Counsel, including: (i) analysis of publicly available information about Defendants; (ii) contentious and lengthy motion practice seeking dismissal of the claims; (iii) protracted motion practice to certify the Class, including motion practice before the Sixth Circuit Court of Appeals; (iv) extensive motion practice at summary judgment; (v) review and analysis of approximately 423,000 pages of documents produced by Defendants and 385,000 pages of documents produced by nonparties in response to Plaintiff's discovery requests and subpoenas; and (vi) deposing over 20 fact and expert witnesses. As a result, Plaintiff and Lead Counsel were knowledgeable of the strengths and weaknesses of their case. *See Hyland v. HomeServices of Am., Inc.*, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (when determining whether preliminary approval is appropriate, courts should evaluate whether the settlement "'appears to be the product of

serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval'").

Moreover, the Settlement was achieved only after the Settling Parties participated in several mediations with the respected and experienced mediators, Gregory P. Lindstrom and Miles N. Ruthberg of Phillips ADR Enterprises, who have mediated numerous complex actions. Prior to the mediations, Lead Counsel and Defendants' Counsel exchanged mediation briefs and presented their arguments on the case's merits and defenses. Negotiations, which at all times were adversarial, continued after the mediation sessions and ultimately produced a result in the Class' best interests. Thus, here, the fact that experienced and sophisticated counsel, well aware of the other side's legal position, engaged in arm's-length settlement negotiations facilitated by experienced mediators, weighs in favor of finding the Settlement fair. *Bd. of Trs. of City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *5 (E.D. Mich. Dec. 27, 2013).

## C. The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

### 1. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Potential Appeals

The proposed Settlement satisfies the Rule 23(e)(2)(C)(i) adequacy standard, taking into account the costs, risks, and delay of trial and appeal, which also covers the Sixth Circuit's overlapping second factor (the complexity, expense, and likely duration of the litigation). The Settlement also satisfies the Sixth Circuit's first factor (plaintiff's likelihood of ultimate success on the merits balanced against the settlement amount) because it provides an immediate and substantial benefit for the Class of $17.05 million.

Given the complexities of this Litigation, the many issues in contention, the amount in controversy, and the substantial risks of continued litigation, Lead Counsel believes the Settlement

represents a favorable resolution of this Litigation. Importantly, the Settlement eliminates the risk that Plaintiff and the Class might recover nothing, or might not recover as much as obtained in the Settlement, if the Litigation were to continue. While Plaintiff is confident in the strength of the case, it is aware of the defenses available to Defendants and the inherent risks and delay of litigation.

For example, on April 21, 2025, the Court partially granted Defendants' motion for summary judgment to the extent Lead Plaintiff sought damages related to defendant Dawn Zier's departure from Tivity Health (summary judgment was denied in all other respects). ECF 303. Additionally, on May 16, 2025, the Court issued a Memorandum Opinion and Order (ECF 428) granting Defendants' motion to exclude the opinions and testimony of Plaintiff's damages expert (ECF 325). Although Plaintiff largely prevailed on summary judgment, and believed it could prevail at trial in spite of the Court's May 16, 2025, Memorandum Opinion and Order, these decisions had the potential to impact Plaintiff's ability to prove damages at trial. Given these and other risks faced by the Class, a positive result was far from assured.

### 2. The Method of Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process also satisfies Rule 23(e)(2)(C)(ii).

The notice plan is discussed below in §IV and includes e-mail or direct-mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and over a national newswire service. Verita will use time-tested methods to ensure that Class Members who held Tivity Health common stock in their own names, as well as those who held Tivity Health common stock in street name, will receive a Postcard Notice. Verita will contact brokerages, custodial banks, and other institutions ("Nominee Holders") that hold securities as nominees in street name for the benefit of their customers who are the beneficial owners of the securities. Based on experience locating class

members who hold securities in street name, Verita has developed a propriety database of Nominee Holders to whom it will send a Postcard Notice and cover letter. Verita will also update the case-specific website (www.TivityHealthSecuritiesLitigation.com) and post important documents regarding the Settlement, including the Stipulation, Preliminary Approval Order, Notice, Proof of Claim, and all briefs and declarations in support of approval of the Settlement, and provide a toll-free number that Class Members can call to make inquiries about the Settlement. Similar notice programs have regularly been found to satisfy due process. *See N.Y. State Tchrs' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (finding similar notice program "satisfied Rule 23's notice requirement"), *aff'd sub nom. Marro v. N.Y. State Tchrs' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

### 3.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses the attorneys' fees award Lead Counsel intends to seek. As discussed above in §II, Lead Counsel intends to request attorneys' fees of no more than 25% of the Settlement Amount and expenses in an amount not to exceed $2,000,000, plus interest on both amounts. This attorneys' fees request is substantially below fee requests approved by courts in this District and the Sixth Circuit. *See, e.g.*, *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn, et al.*, No. 3:18-cv-01368, ECF 267 at ¶3 (M.D. Tenn. Oct. 7, 2022) ("The Court finds that the amount of fees awarded [one-third of $36 million recovery] is fair and reasonable under the 'percentage-of-recovery' method . . . and that the awarded fee is in accord with Sixth Circuit precedent.") (attached as Ex. 1 hereto); *Grae v. Corr. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) ("The Court finds that the amount of fees awarded [one-third of $56 million recovery] is fair and reasonable under the 'percentage-of-recovery' method . . . and that the awarded fee is in accord with Sixth Circuit precedent."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court finds that the requested counsel fee of one third [of $73

million recovery] is fair and reasonable and fully justified. The Court finds it is within the range of fees ordinarily awarded."); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *3 (E.D. Tenn. May 17, 2013) (holding that "attorneys' fees requested represent one-third of the settlement fund . . . . [T]he percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."). In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to [Class] Counsel immediately upon entry of this Order").

Further, Plaintiff intends to request an amount not to exceed $26,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

### 4. Identification of Agreements

Rule 23(e)(2)(C)(iv) requires that the parties identify any agreements between them. Plaintiff and Defendants have negotiated a standard supplemental agreement providing that, if the Court provides a renewed opportunity to opt out and opt outs from the Class equal or exceed a certain threshold, then Defendants shall have the option to terminate the Settlement. Stipulation, ¶7.4. Notice of the pendency of this litigation has been provided to the Class, and Class Members have had the opportunity to request exclusion. None did so. No additional opportunity to opt out is required (*see* Fed. R. Civ. P. 23 (e)(4)), and the Parties do not believe that providing a second opportunity to opt out of the Class is warranted. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018).

### D. Class Members Are Treated Equitably

As reflected in the Plan of Allocation, the Settlement treats Class Members equitably relative to each other while taking into account the timing of their purchase or acquisition of Tivity Health

common stock, and their subsequent disposition, if any, and provides that each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated by the Plan of Allocation. Accordingly, Rule 23(e)(2)(D) is satisfied.

### E. The Judgment of Experienced Trial Counsel

The Sixth Circuit's fourth factor (judgment of experienced counsel) is also satisfied. Lead Counsel has carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence pertaining to the claims asserted against Defendants and the defenses they raised; the likelihood of prevailing on the claims; and the risk, expense, and duration of continued litigation, including any appeals, and have concluded that the Settlement is fair, reasonable, and in the best interests of the Class.

Significant weight should be attributed to experienced counsel's evaluation and conclusion that a settlement is in the best interests of the class. *See Williams v. Vukuvich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (stating that courts should defer judgment of experienced counsel who have evaluated the strength of plaintiff's case); *Shy v. Navistar Int'l Corp.*, 2022 WL 2125574, at *6 (S.D. Ohio June 13, 2022) ("Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair."); *Rudi v. Wexner*, 2022 WL 1682297, at *4 (S.D. Ohio May 16, 2022) ("The Court gives significant weight to the opinions of Settling Shareholders' counsel, who have indicated that the Settlement is fair, reasonable, and adequate."). Here, Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action recoveries throughout the country, including in this District and within the Sixth Circuit. *See* www.rgrdlaw.com. Given the experience possessed by Lead Counsel, weight should be given to its determination that, taking into account the strength of the claims alongside the time, expense, complexity of the issues, and uncertainty of trial and any appeals, the Settlement set forth in the Stipulation is a good result that confers substantial, immediate benefits on the Class.

- 13 -

### F. The Sixth Circuit's Public Interest Factor Is Satisfied

The public interest factor supports approval of the Settlement. Indeed, as a matter of public policy, settlement is a strongly favored method for resolving disputes, particularly in complex class actions such as this. *See, e.g.*, *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Co.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting the "federal policy favoring settlement of class actions"); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) ("[T]he law generally favors and encourages the settlement of class actions."); *Motter*, 2014 WL 12892732, at *1 ("The Court further recognizes that 'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The fairness and adequacy of the $17.05 million recovery are clear. Given the litigation risks involved, it is a fair result for the Class. It could not have been achieved without the full commitment of Plaintiff and its counsel. Plaintiff and Lead Counsel respectfully submit that the Settlement is both fair and adequate such that notice of the Settlement should be sent to the Class.

## IV. THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be settled without the approval of the court, and notice of the proposed settlement shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e). In addition, the Rule provides: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The Preliminary Approval Order will require the Claims Administrator to: (i) notify Class Members of the Settlement by emailing or mailing (where an email is unavailable) the Postcard Notice to all Class Members who can be identified with reasonable effort; (ii) cause a copy of the

- 14 -

Summary Notice to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service; and (iii) cause the Notice and Proof of Claim, among other documents, to be posted on the Settlement-designated website. The proposed method of giving notice to Class Members is appropriate because it is calculated to reach Class Members who can be identified with reasonable effort. *Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (notice scheme sufficient because it was "'reasonably calculated to reach interested parties'"); *Williams*, 720 F.2d at 921 (plaintiff class must receive the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort); *Kizer v. Summitt Partners, L.P.*, 2012 WL 1598066, at *9 (E.D. Tenn. May 7, 2012) (sufficient notice where mailings were made to last known addresses of class members); Fed. R. Civ. P. 23(e)(1)(B) (courts "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]").

As required by Rule 23(c)(2) of the Federal Rules of Civil Procedure and the PSLRA (15 U.S.C. §78u-4(a)(7)), the Notice describes in plain English the nature of the Litigation; sets forth the definition of the Class; and states the Class' claims. In addition, the Notice describes the Settlement; the Settlement Amount, both in the aggregate and on an average per-share distribution basis; explains the Plan of Allocation; sets out the amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement approval, including the amount of the requested fees and expenses determined on an average per-share basis and the amount sought by Plaintiff for its time and expenses; provides contact information for Lead Counsel, including a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement. The Notice also discloses the date, time, and place of the formal fairness hearing and the procedures for appearing at the hearing and objecting to the Settlement. Lead Counsel believes that the Notice,

- 15 -

along with the Summary Notice and Postcard Notice, will fairly apprise Class Members of their rights with respect to the Settlement, that it is the best notice practicable under the circumstances, and that it should be approved.

## V.    PROPOSED SCHEDULE OF EVENTS

The Settling Parties respectfully propose the following schedule for the Court's consideration, which is set forth in the proposed Preliminary Approval Order:

| Event | Deadline |
|---|---|
| Deadline for emailing or mailing the Postcard Notice to Class Members and posting the Notice and Proof of Claim on the Settlement website (the "Notice Date") | No later than 20 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | No later than 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | No later than 35 calendar days prior to the Settlement Hearing |
| Deadline for filing objections | No later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | No later than 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Proofs of Claim | No later than 90 calendar days after the Notice Date |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## VI. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED: June 24, 2025                Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977


s/ Christopher M. Wood
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/432-2398 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (admitted *pro hac vice*)
SNEHEE KHANDESHI (admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
skhandeshi@rgrdlaw.com

- 17 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (admitted *pro hac vice*)
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
JASON A. FORGE (admitted *pro hac vice*)
DEBRA J. WYMAN (admitted *pro hac vice*)
DAVID W. MITCHELL (admitted *pro hac vice*)
SARA B. POLYCHRON (admitted *pro hac vice*)
RACHEL C. BRABY (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
jforge@rgrdlaw.com
debraw@rgrdlaw.com
davidm@rgrdlaw.com
spolychron@rgrdlaw.com
rbraby@rgrdlaw.com

Lead Counsel for Class Representative

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
SETH M. HYATT, #031171
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Local Counsel

ALLOTTA FARLEY CO., L.P.A.
MICHAEL E. HEFFERNAN (admitted *pro hac vice*)
3240 Levis Commons Blvd.
Perrysburg, OH 43551
Telephone: 419/535-0075
419/535-1935 (fax)
mheffernan@allottafarley.com

Additional Counsel

- 18 -