# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| ROBERT STROUGO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:20-cv-00165 |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| | ) | Judge Waverly D. Crenshaw, Jr. |
| vs. | ) | Magistrate Judge Jeffery S. Frensley |
| | ) ) | |
| TIVITY HEALTH, INC., et al., | ) ) | PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION |
| | ) | SETTLEMENT AND APPROVAL OF PLAN |
| Defendants. | ) | OF ALLOCATION AND MEMORANDUM |
| | ) | OF LAW IN SUPPORT THEREOF |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL HISTORY ......................................................2

III. THE SETTLEMENT WARRANTS FINAL APPROVAL.....................................3

    A. Legal Standards for Final Approval of Class Action Settlement............................3

    B. The Rule 23 and Sixth Circuit Factors Support Approval......................................5

        1. The Class Was Adequately Represented .......................................................5

        2. The Absence of Fraud or Collusion Favors Approval ..................................6

        3. The Relief Provided to the Class Is Adequate .............................................7

            a. The Complexity, Expense, and Likely Duration of the Litigation.................................................................................................7

            b. The Likelihood of Success on the Merits ........................................8

        4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval ...................................................................11

        5. Class Counsel and Plaintiff Endorse the Settlement..................................11

        6. The Reaction of the Class Supports Final Approval...................................12

        7. Public Interest Favors Approval of the Settlement ....................................13

        8. Other Rule 23(e)(2) Factors Support Final Approval ................................13

IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................15

V. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS...............................................................................16

VI. CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ...................................................................9

*Arledge v. Domino's Pizza, Inc.*,
2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) .......................................7

*Armstrong v. Gallia Metro. Hous. Auth.*,
2001 WL 1842452 (S.D. Ohio Apr. 23, 2001) .....................................12

*Bartell v. LTF Club Operations Co.*,
2020 WL 7062834 (S.D. Ohio Aug. 7, 2020).......................................10

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................12

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981)..................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2015 WL 10714013 (5th Cir. Nov. 4, 2015)........................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .....................................15

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ...............................................................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .................................................................9

*Grae v. Corr. Corp. of Am.*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ...................................14

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ...............................................................4

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
*aff'd sub nom. Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) ..........................................................4

4905-8077-8602.v1

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
  *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...................................................................10

*In re Broadwing, Inc. ERISA Litig.*,
  252 F.R.D. 369 (S.D. Ohio 2006) ................................................................13

*In re CBL & Assocs. Props., Inc. Sec. Litig.*,
  2023 WL 12121299 (E.D. Tenn. Aug. 23, 2023) ........................................17

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ..............................................8

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ................................................................7

*In re Home Point Cap. Inc. Sec. Litig.*,
  2024 WL 3273275 (E.D. Mich. June 28, 2024)..........................5, 6, 12, 15

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..........................................15

*In re Prandin Direct Purchaser Antitrust Litig.*,
  2015 WL 1396473 (E.D. Mich. Jan. 20, 2015)..............................................7

*In re Se. Milk Antitrust Litig.*,
  2013 WL 2155379 (E.D. Tenn. May 17, 2013)..............................6, 8, 12

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014) ........................................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011),
  *aff'd*, 838 F.3d 223 (2d Cir. 2016) ..............................................................9

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...........................................................9

*IUE-CWA v. GMC*,
  238 F.R.D. 583 (E.D. Mich. 2006) ..............................................................11

*Karpik v. Huntington Bancshares Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 18, 2021)............................6, 7, 8, 12

- iv -

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006),
*aff'd sub nom. Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008) ..................................................................8

*New York State Tchrs.' Ret. Sys. v. GMC*,
315 F.R.D. 226 (E.D. Mich. 2016),
*aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*,
2017 WL 6398014 (6th Cir. Nov. 27, 2017).................................... *passim*

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) .............................................................8

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011) .............................................................8, 12

*Robbins v. Koger Props. Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...............................................................9

*Robinson v. Shelby Cnty. Bd. of Educ.*,
566 F.3d 642 (6th Cir. 2009) ...................................................................3

*Stein v. U.S. Xpress Enters., Inc.*,
No. 1:19-cv-0098-TRM, ECF 248
(E.D. Tenn. July 12, 2023)......................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................13

*UAW v. GMC*,
497 F.3d 615 (6th Cir. 2007) ............................................................ *passim*

*Whitford v. First Nationwide Bank*,
147 F.R.D. 135 (W.D. Ky. 1992)........................................................4, 14

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ...................................................................5

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
§78u-4(a)(7) ....................................................................................16, 17

Federal Rules of Civil Procedure
    Rule 23 .............................................................................................................. *passim*
    Rule 23(a) ................................................................................................................ 17
    Rule 23(b)(3) ........................................................................................................... 17
    Rule 23(c)(2)(B) ................................................................................................. 16, 17
    Rule 23(e) .............................................................................................................. 1, 3
    Rule 23(e)(1)(B) ..................................................................................................... 16
    Rule 23(e)(2) ....................................................................................................... 3, 13
    Rule 23(e)(2)(A) ....................................................................................................... 5
    Rule 23(e)(2)(B) ....................................................................................................... 6
    Rule 23(e)(2)(C) ....................................................................................................... 7
    Rule 23(e)(2)(C)(ii) ................................................................................................ 14
    Rule 23(e)(2)(C)(iii) ............................................................................................... 14
    Rule 23(e)(2)(C)(iv) ............................................................................................... 14
    Rule 23(e)(2)(D) ..................................................................................................... 14

**SECONDARY AUTHORITIES**

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action*
    *Litigation: 2024 Full Year Review*
    (NERA Jan. 22, 2025) ............................................................................................. 11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff and Class Representative Sheet Metal Workers Local No. 33, Cleveland District, Pension Fund ("Plaintiff") respectfully submits this memorandum in support of its motion for: (i) final approval of the proposed settlement of this securities class action; and (ii) approval of the proposed Plan of Allocation.[1]

## I.    INTRODUCTION

Plaintiff, through its counsel, has obtained a $17.05 million cash settlement for the benefit of the Class in exchange for the dismissal and full release of all claims brought against Defendants in this Litigation.  As described below and in the Wood Declaration, the Settlement, which was reached less than a month before the start of the scheduled trial, is a very good result for the Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.

Plaintiff's decision to settle the Litigation was well informed by an extensive investigation, hard-fought litigation by experienced counsel, substantial discovery efforts, and arm's-length settlement negotiations supervised by experienced mediators.  *See* Wood Decl., ¶¶4-11.  While Plaintiff believes that its claims had merit and that it would prevail at trial, it also recognizes that had the Litigation continued, it faced substantial risks to obtaining (and collecting upon) any recovery for the Class, let alone a recovery greater than that afforded by the Settlement.  Specifically, in addition to the inherent risks related to establishing Defendants' liability, when the Settlement was reached, the parties' motions *in limine* were pending before the Court and thus there was the risk that the

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated June 23, 2025 (ECF 445) (the "Stipulation") or in the accompanying Declaration of Christopher M. Wood in Support of: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Wood Declaration" or "Wood Decl."). Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

- 1 -

Court would substantially narrow the evidence Plaintiff could introduce (or permit Defendants to introduce prejudicial evidence) at trial. There was also risk relating to *Daubert* motions (one of which the Court granted and several of which were still pending), as well as Defendants' renewed motions for summary judgment and to decertify the class. Any resulting appeals would have been very expensive, could have dragged on for years, and could have raised substantial risks of either a reduced recovery or no recovery at all.

In light of these considerations, Plaintiff and Class Counsel believe that the $17.05 million Settlement is eminently fair, reasonable, adequate, easily satisfies the standards of approval under Fed. R. Civ. P. 23, and provides a very favorable result for the Class. The reaction of the Class thus far also supports the Settlement. As discussed below, potential Class Members have been notified of the Settlement in accordance with the Preliminary Approval Order[2] and, to date, not a single Class Member has filed an objection. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was set forth in the Notice made available to Class Members. This Plan governs how claims will be calculated and, ultimately, how the Net Settlement Fund will be equitably distributed to Authorized Claimants. No objections have been filed to the Plan of Allocation.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Wood Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Class Counsel's efforts on behalf of the Class; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.

---

[2]      *See generally* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion ("Murray Decl."), submitted herewith.

## III. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Legal Standards for Final Approval of Class Action Settlement

Federal Rule of Civil Procedure ("Rule") 23 requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is well settled within the Sixth Circuit that "federal policy favor[s] settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007). "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'" *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

Rule 23(e)(2) provides courts with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate":

- (A) the class representatives and class counsel have adequately represented the class;

- (B) the proposal was negotiated at arm's length;

- (C) the relief provided for the class is adequate, taking into account:

  - (i) the costs, risks, and delay of trial and appeal;

  - (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  - (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

  - (iv) any agreement required to be identified under Rule 23(e)(3); and

- (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee

Notes to the 2018 Amendments to the Federal Rules of Civil Procedure. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the [Sixth] Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). The Court considered these factors in connection with its consideration of preliminary approval of the Settlement and found that each had been met. *See* ECF 446.

To evaluate the substantive fairness of the settlement, courts in the Sixth Circuit have considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

These factors should not be applied in a formalistic fashion. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Courts "'judge the fairness of a proposed compromise,'" "'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement,'" as opposed to deciding the merits of the case or resolving unsettled legal questions. *Id.* at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Likewise, "[t]he district court enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir.

- 4 -

1992); *New York State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

### B. The Rule 23 and Sixth Circuit Factors Support Approval

#### 1. The Class Was Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." The Sixth Circuit looks at two criteria to determine whether adequacy is met: the representative must (i) "'have common interests with unnamed members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

These requirements have easily been met here. Plaintiff's claims are typical of and co-extensive with the claims of the Class, and it has no antagonistic interests with respect to the Class as a whole. Indeed, in certifying the Class following adversarial briefing, this Court previously recognized that Plaintiff was an adequate class representative meeting the "common question" requirements with the class, and that the "track record in this case makes it more than apparent that the Pension Fund will vigorously pursue this action on behalf of the class." ECF 243 at 5, 7. Since then, Plaintiff has amply demonstrated that it has an interest in obtaining the largest possible recovery in this Litigation, as do the other absent Class Members. *See In re Home Point Cap. Inc. Sec. Litig.*, 2024 WL 3273275, at *3 (E.D. Mich. June 28, 2024) (finding lead plaintiff had adequately represented the class where he "holds claims entirely typical of those of the Class members and actively participated in the litigation, working closely with lead counsel"). As detailed in its declaration, Plaintiff was highly involved in each stage of the Litigation and worked closely with Class Counsel throughout the pendency of this action to achieve the best possible result for itself and the Class. *See* Declaration of John R. Sindyla in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Approval of Plan of Allocation and for an Award of Attorneys'

- 5 -

Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4), on behalf of Sheet Metal Workers Local No. 33, Cleveland District, Pension Fund ("Sindyla Decl."), submitted herewith.

Class Counsel has also adequately represented the Class. Class Counsel is highly experienced in securities litigation, with a long and successful track record representing investors in cases in courts throughout the country. *Home Point*, 2024 WL 3273275, at \*7-\*8. *See also* Declaration of Christopher M. Wood Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), Ex. F, submitted herewith. Class Counsel had a strong appreciation of the strengths and weaknesses of the case before agreeing to the Settlement, and believes it is in the best interest of the Class. Here, Plaintiff's Counsel incurred over $1.9 million in expenses and expended over 29,700 hours during a span of over five years vigorously pursuing the Litigation. RGRD Decl., ¶¶4-12; Declaration of Jerry E. Martin Filed on Behalf of Barrett Johnston Martin & Garrison, PLLC in Support of Application for Award of Attorneys' Fees and Expenses, ¶¶4-9, submitted herewith. Accordingly, this factor is easily satisfied and warrants final approval. *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "***was willing to, and indeed did, commit substantial 'resources . . . to represent[ ] the class[.]***'").

## 2. The Absence of Fraud or Collusion Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval. "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at \*6 (E.D. Tenn. May 17, 2013). *See also Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at \*4

(S.D. Ohio Feb. 18, 2021).  "Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery."  *Id.*

Here, the proposed Settlement was reached after more than five years of litigation, with both sides vigorously advocating their respective positions.  Indeed, the Settlement was reached only after arm's-length negotiations facilitated by two experienced and well-respected mediators Gregory P. Lindstrom and Miles N. Ruthberg of Phillips ADR.  Wood Decl., ¶¶100-104.  The Settlement negotiations were extensive, and included the exchange of multiple briefs, four separate mediation sessions, and follow-up negotiation efforts spanning over two years.  *Id.*  As such, the Settlement warrants approval given that the "'participation of an independent mediator . . . [which] virtually insures that the negotiations were conducted at arm's length and without collusion.'"  *See Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3. The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors.  This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity, expense, and likely duration of the litigation; and (ii) the likelihood of success on the merits.  Each of these factors supports approval.

### a. The Complexity, Expense, and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement."  *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008).  Most class actions are "'inherently complex'" and "'[s]ettlement avoids the costs, delays, and multitude of other problems associated with them.'"  *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *2

(E.D. Mich. Jan. 20, 2015). Indeed, courts have consistently recognized that "'[s]ecurities class actions are often "difficult and . . . uncertain."'" *See, e.g.*, *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves complex issues relating to loss causation and damages. The case also involves complicated accounting and valuation issues, which involve technical and complex analysis, necessitating detailed and disputed expert testimony. Indeed, Class Counsel retained experts to provide reports and deposition testimony regarding these issues, which would be fiercely contested at trial.

When this over five-year old Litigation settled, trial was less than a month away. This Settlement avoids the risks of trial, and the certain and lengthy appeal by the non-prevailing party.[3] "As the Settlement provides an immediate, significant, and certain recovery for Class [M]embers, this factor favors the Court's approval of the Settlement." *See GMC*, 315 F.R.D. at 236.

### b. The Likelihood of Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik*, 2021 WL 757123, at *5 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). In other

---

[3] *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (affirming settlement and noting that, among other factors in favor of settlement, "[f]ollowing the trial, there would most likely have been an appeal that would have required an additional investment of substantial resources and time"); *Se. Milk*, 2013 WL 2155379, at *5 ("[T]he likelihood of an appeal was great . . . [and] [t]he Court agrees with plaintiffs that the immediate recovery of substantial monetary and structural relief provided by the settlement far outweighs the risk and commitment of time inherent in further litigation of this complex matter, especially in view of the risks, expenses and delays noted above."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010) ("Even if litigation is successful for the plaintiff class, appeals are likely to delay any sort of meaningful relief. In contrast, the settlement provides recovery without delay.").

4905-8077-8602.v1

words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the Settlement. *UAW*, 497 F.3d at 631.

Plaintiff believes that the evidence establishes that: Defendants made false and misleading statements and omissions and participated in a fraudulent scheme by deceiving investors about the long term financial outlook and success of the Company's Nutrisystem acquisition (Wood Decl., ¶6), and that Defendants' misconduct caused Tivity's stock to trade at inflated prices, thereby causing harm to Class Members when the risks and conditions concealed by Defendants' misconduct, or the economic consequences thereof, materialized. *Id.*, ¶7.

Plaintiff alleged that Defendants concealed material information regarding the Company's business, which was revealed in part through public disclosures on February 19, 2020 with Tivity's admission that "the nutrition business has not worked out," leading to a non-cash impairment charge of $377 million, and that Nutrisystem's 2020 forecast was a mere $50-$60 million, down drastically from the Company's $131 million 2020 forecasted just one year earlier. Nevertheless, Plaintiff is also cognizant of the fact that there was no guarantee that it would prevail at trial. Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[4]

---

[4]     *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion PSLRA judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223

Here, as detailed in the Wood Declaration, there were numerous potential defenses available to Defendants that could reduce, or preclude entirely, any recovery by the Class. Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants have maintained that the evidence will establish at trial that their statements were true to the best of their knowledge; that the risks had all been disclosed or were unknown to Defendants at the time their statements were made; and that Class Members' losses were instead due to non-fraudulent factors. Wood Decl., ¶12.[5] Defendants had also successfully excluded Plaintiff's damages expert from trial. Class Counsel was fully informed of the strengths and weaknesses of Plaintiff's case, including the many complicated and nuanced legal and economic issues that would have to be resolved in Plaintiff's favor in order to achieve a successful result.[6] In short, continued litigation would be hard fought, and expensive, and a positive result was far from assured. *See Bartell v. LTF Club Operations Co.*, 2020 WL 7062834, at *4 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiff's claims creates

---

(2d Cir. 2016); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (setting aside jury verdict in favor of plaintiffs and granting securities defendants' post-trial motion for judgment as a matter of law), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2015 WL 10714013, at *3 (5th Cir. Nov. 4, 2015) (granting a "third interlocutory appeal in a [securities] case that has remained in the class certification stage for thirteen years," with two successive appeals to the U.S. Supreme Court).

[5]      Class Counsel also anticipated a battle of experts at trial on the disputed issues. Wood Decl., ¶13. Each side had retained experts who were expected to offer opposing testimony about loss causation, damages, accounting, and SEC disclosure requirements. *Id.* There is no guarantee that the jury would accept Plaintiff's experts' testimony over Defendants.

[6]      Motions concerning the admissibility of certain evidence were pending at the time the Settlement was reached. The outcome of those motions could have severely affected evidence available for the jury to evaluate.

- 10 -

substantial risk to the Class.  When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").

Despite these risks, Plaintiff obtained a very favorable recovery.  The Settlement exceeds the median recovery in securities class action settlements in 2024 according to data from NERA.  *See, e.g.*, Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full Year Review*, at 23, Figure 22 (NERA Jan. 22, 2025) (showing the median settlement in §10(b) cases in 2024 was $14 million).  Accordingly, the proposed Settlement is a very good result for the Class and is certainly within the range of what would be determined to be fair, reasonable, and adequate.

### 4. The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement."  *GMC*, 315 F.R.D. at 236.  Here, Class Counsel undoubtedly had a thorough understanding of the strengths and weaknesses of Plaintiff's claims as trial was less than a month away.

There can be no question that by the time the Settlement was reached, Plaintiff and Class Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *Id.* at 237, and reached the well-informed decision to enter into this Settlement.  Accordingly, this factor supports approval of the Settlement.

### 5. Class Counsel and Plaintiff Endorse the Settlement

In assessing the fairness of a proposed settlement, courts consider counsel's endorsement of the settlement, which "is entitled to significant deference."  *Id.* at 238; *accord IUE-CWA v. GMC*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is

- 11 -

in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'"). This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of plaintiff's case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, Class Counsel carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of continued litigation. Based on these considerations, Class Counsel concluded that the Settlement is not only fair and reasonable but is a highly favorable result for the Class. Wood Decl., ¶¶10, 95-106; *Karpik*, 2021 WL 757123, at *6. Likewise, Plaintiff approves the Settlement. *See* Sindyla Decl., ¶4. "Their support also favors approval." *Karpik*, 2021 WL 757123, at *6. Accordingly, this factor supports final approval.

### 6. The Reaction of the Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class. *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *Se. Milk*, 2013 WL 2155379, at *6. *See also Home Point*, 2024 WL 3273275, at *4 ("The Court recognizes that the absence of objections and requests for exclusion from the Settlement supports a finding that it is fair, reasonable, and adequate, further supporting approval."). Here, as detailed *infra*, Section V, as of October 6, 2025, the Claims Administrator has disseminated over 25,700

Postcard Notices to potential Class Members.  To date, not one Class Member has objected to any aspect of the Settlement.[7]  Thus, this factor favors approval of the Settlement.

### 7. Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'"  *GMC*, 315 F.R.D. at 241-42.  As discussed herein, the Settlement provides $17.05 million in cash, plus interest.  The Settlement puts an end to this five-year-old Litigation, which, absent settlement would have continued in this Court and in the Sixth Circuit.  Thus, the Settlement also furthers public policy by conserving judicial resources.  *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8. Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2) also considers: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-members' claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members.  *See*

---

[7]  The deadline to provide the Court and counsel with objections is October 22, 2025 ("objections and any supporting papers" must be "received, not simply postmarked, on or before twenty- one (21) calendar days prior to the Settlement Hearing" on November 12, 2025).  ECF 446 at ¶16.

- 13 -

Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), & (iv); Fed. R. Civ. P. 23(e)(2)(D). Each of these additional considerations also supports final approval of the Settlement.

*First*, the method for processing Class Members' claims and distributing relief to eligible claimants are well-established, effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund. Here, the Court-appointed Claims Administrator will review and process the claims under the guidance of Class Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the proposed Plan of Allocation), *see infra* Section IV. *See, e.g.*, *GMC*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).

*Second*, as discussed in the accompanying fee and expense memorandum, Class Counsel is applying for an award of 25% of the common fund as compensation for the services it rendered on behalf of the Class, as well as payment of litigation costs and expenses. The proposed attorneys' fees are reasonable in light of the work performed and the results obtained, and a 25% award is consistent with or lower than attorneys' fee percentages that courts have approved in similar cases. *See, e.g.*, *Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-cv-0098-TRM, ECF 248 at 2 (E.D. Tenn. July 12, 2023) (awarding fees of one-third) (Ex. 1 to Fee Memo); *Grae v. Corr. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding fees of one-third).[8] Notably, approval of the requested fees is separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees. *See* Stipulation, ECF 445, ¶6.4.

---

[8] Additional jurisprudence supporting this award is included in the Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memo"), submitted herewith.

- 14 -

*Third*, the Parties entered into a confidential supplemental agreement establishing conditions under which Defendants may terminate the Settlement if the Court permitted an additional opt out opportunity to Class Members and a certain threshold of Class Members excluded themselves. Stipulation, ECF 445, ¶7.4. This type of agreement is a standard provision in securities class action settlements and has no negative impact on the fairness of the Settlement. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

*Fourth*, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of the Plan of Allocation requires that it is fair, reasonable, and adequate. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011). """Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.""" *Id. See also Home Point*, 2024 WL 3273275, at *7, n.1.

Here, the proposed Plan of Allocation is fair, reasonable, and adequate. The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their recognized loss. Wood Decl., ¶¶107-110. The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have losses consistent with the statutory damage framework of the Exchange Act and the evidence Plaintiff intended to present at trial. Moreover, the Plan of Allocation was disclosed in the Notice made available to potential Class Members and nominees and, to date, there have been no objections to the

Plan of Allocation. *See* Murray Decl., Ex. B (Notice). Thus, the Plan of Allocation is fair and reasonable.

## V. THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA. *See* 15 U.S.C. §78u-4(a)(7). A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). The notice program utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has mailed or emailed over 25,700 Postcard Notices to potential Class Members and nominees. *See* Murray Decl., ¶¶5-11. The Claims Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶12. In addition, the previously-established dedicated toll-free telephone number and website were updated to assist potential Class Members with inquiries regarding the Litigation, the Settlement, and the claims process. *Id.*, ¶¶13-14.

The Notice provides Class Members, among other things, (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties

- 16 -

are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Class Members' right to object to the Settlement, the Plan of Allocation, and/or the maximum attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Class Members; and (x) a way of obtaining additional information about the Litigation, by contacting Class Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §78u-4(a)(7). The Notice also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. B.

Plaintiff and its counsel have satisfied all of the elements of the notice plan approved by the Court. *See generally* Murray Decl. Accordingly, the notice program implemented in this Litigation constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also In re CBL & Assocs. Props., Inc. Sec. Litig.*, 2023 WL 12121299, at *2 (E.D. Tenn. Aug. 23, 2023) (finding similar notice program "constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement" and "satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, as amended, and all other applicable law and rules"); *GMC*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014) (finding that dissemination of notice by first class mail and posting on a hosted website satisfied the requirements of Rule 23).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) approve the Settlement as fair, reasonable, and adequate; and (ii) approve the Plan of Allocation as fair and reasonable pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

- 17 -

DATED:  October 8, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977


     s/ Christopher M. Wood
_____
CHRISTOPHER M. WOOD

200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2203
615/432-2398 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (admitted *pro hac vice*)
SNEHEE KHANDESHI (admitted *pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
skhandeshi@rgrdlaw.com

- 18 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (admitted *pro hac vice*)
ELLEN GUSIKOFF STEWART (admitted *pro hac vic*)
JASON A. FORGE (admitted *pro hac vice*)
DEBRA J. WYMAN (admitted *pro hac vice*)
DAVID W. MITCHELL (admitted *pro hac vice*)
SARA B. POLYCHRON (admitted *pro hac vice*)
RACHEL C. BRABY (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
jforge@rgrdlaw.com
debraw@rgrdlaw.com
davidm@rgrdlaw.com
spolychron@rgrdlaw.com
rbraby@rgrdlaw.com

Class Counsel for Class Representative

BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
JERRY E. MARTIN, #20193
SETH M. HYATT, #031171
200 31st Avenue North
Nashville, TN 37203
Telephone: 615/244-2202
615/252-3798 (fax)
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Local Counsel

ALLOTTA FARLEY CO., L.P.A.
MICHAEL E. HEFFERNAN (admitted *pro hac vice*)
2222 Centennial Road
Toledo, OH 43617
Telephone: 419/535-0075
419-535-1935 (fax)
mheffernan@allottafarley.com

Additional Counsel